# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**PROSONIC CORPORATION,**

    **Plaintiff,**

**vs.**                                          **Case No. 3:07cv442-RS-EMT**

**JOHN ROBERT BAKER, JR.,**

    **Defendant.**
_____/

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before me is Plaintiff's Motion for Preliminary Injunction (Doc. 3). Defendant opposes the motion (Doc.16).

### I. Background

In this diversity action, Plaintiff Prosonic Corporation ("Prosonic") alleges that its former employee, Defendant John Robert Baker, Jr. ("Baker"), violated the Non-Competition, Non-Disclosure, and Non-Solicitation Agreement ("Agreement") he executed.  Prosonic alleges that Baker breached the Agreement by selling sonic drilling services for Prosonic's competitor, WDC Exploration & Wells, Inc. ("WDC"); by disclosing Prosonic's confidential and proprietary information, including its trade secrets; and by soliciting Prosonic's customers. The four-count Verified Complaint (Doc. 1) asserts claims for breach of contract; violations of the Ohio Trade Secrets Act, Ohio Rev. Code §§ 1333.61-1333.69, and the Uniform Trade Secrets Act under Florida law, Fla. Stat. Ch. 688; and injunctive

relief.

The motion requests that, pending a determination on the merits of its claims, Baker be enjoined from:

    1.  Disclosing Prosonic's confidential and proprietary information, including its trade secrets;

    2.  Selling sonic drilling services; and

    3.  Otherwise violating the terms of the Agreement.

The motion further requests that:

    4.  Baker be ordered to return to Prosonic all its confidential and proprietary information, including trade secrets, directly or indirectly possessed by Baker.

An evidentiary hearing on the motion was held on November 20, 2007.  *See* Doc. 27, Tr. of Prelim. Inj. Hr'g.  Following the presentation of evidence, I entered oral orders (1) denying the motion and (2) requiring that Baker maintain detailed records of all business activities that Prosonic contends are proscribed under the Agreement so that money damages, if any, may be reasonably ascertained in the event that Baker ultimately is found to have violated the Agreement.

## II.  Analysis

The Agreement, by its terms and by stipulation of the parties, is governed by Ohio law.  (Compl., Doc. 1, Exh. D, p. 3 ¶ 4.)  Under Ohio and Sixth Circuit law, a preliminary injunction is "an extraordinary remedy that should only be granted when the movant carries its burden of persuasion."  *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002).  In determining whether a preliminary injunction is appropriate, a court considers the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether

the movant would suffer irreparable injury if the injunction is not granted; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction.  *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). Although the four factors must be balanced and no one factor is dispositive, "irreparable injury is a sine qua non for issuance of an injunction." *Patio Enclosures*, 39 Fed. Appx. at 967 (*citing Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

  I find that Prosonic has failed to support its entitlement to injunctive relief. The evidence presented at the evidentiary hearing raises serious questions about whether Prosonic is a real party in interest and the proper plaintiff in this lawsuit. According to the testimony, Prosonic was absorbed by Boart Longyear, a global company engaged in mineral exploration, in December 2006.  Prosonic exists, in its present form, as merely a "shell company" in the United States.

  Lawrence Knolle, Prosonic's former chief operating officer and current Boart Longyear employee, testified that all of Prosonic's corporate functions have been transferred to Boart Longyear; that Boart Longyear controls all of Prosonic's operations, that all Prosonic technology and equipment have been swallowed by Boart Longyear; that Prosonic no longer manufactures sonic drill technology; and that Prosonic no longer submits bids for work.  (Knolle Test., Doc. 27, p. 35, lines 5-15; p. 36, lines 1-13; p. 41, lines 1-8.)  John Walsh, former vice president of human resources and administration for Prosonic and current global training director for Boart Longyear, testified that the only location where Prosonic maintains a true presence in its corporate form is Europe and that its sonic activities in the United States are operated by Boart Longyear.  (Walsh Test., Doc.

27, p. 61, lines 1-20; p. 71, lines 4-11.)  Prosonic has failed to establish that it currently conducts any business, including sonic business, in the United States. Assuming that Prosonic continues to exist as a corporate entity, at least in name, I cannot properly find a threat of harm, let alone, harm that is *irreparable*, to a corporation that no longer competes in the very work that it seeks to enjoin.

Assuming that Boart Longyear, not Prosonic, is the proper plaintiff, Prosonic has failed to demonstrate that Boart Longyear is entitled to injunctive relief.  Although the Agreement purports to provide rights to assignees, successors, and third-party beneficiaries, *see* Compl., Doc. 1, Exh. D, p. 4 ¶¶ 6 & 7, Prosonic has failed to establish that Boart Longyear has acquired such rights.  Walsh testified that only Agreements executed by *active* Prosonic employees were included with the documents governing the sale of Prosonic to Boart Longyear and that the Agreement executed by Baker was not included among those assets because Baker was an *ex-employee* of Prosonic at the time of purchase.  (Walsh Test., Doc. 27, p. 51, lines 18-25; p. 68, lines 5-25; p. 69-71.)  It is questionable then whether Prosonic's successor corporation, Boart Longyear, had acquired rights in the Agreements of former Prosonic employees at the time it purchased Prosonic.  Even assuming that Boart Longyear had acquired such rights by the terms of the Agreement or by operation of Ohio law, as Walsh and Prosonic's counsel suggested at the hearing, the issue is wholly irrelevant because Boart Longyear is not a named Plaintiff in this lawsuit.

The evidence also failed to establish that Baker or WDC currently possess, directly or indirectly, Prosonic's confidential or proprietary information, including its trade secrets.  No witness could identify or even conjecture about which allegedly confidential information Baker has divulged to WDC or might

disclose in the future.

In addition, I cannot properly infer that any competition between Baker/WDC and Prosonic, if such competition even exists, is *unfair* competition in breach of the Agreement as opposed to *ordinary* competition. Walsh testified that Prosonic's sonic equipment and methods are unique and specific to Prosonic. (Walsh Test., Doc. 27, p. 79, lines 4-25.)  I thus have no basis to support a finding that Prosonic's company-specific products and services are transferrable to WDC. Baker sells WDC sonic products and services, not Prosonic sonic products and services.  The evidence produced by Prosonic fails to establish a nexus between the sonic equipment and services it allegedly provides and those provided by WDC sufficient to support a claim of unfair competition.

Finally, the equities weigh against granting the relief requested.  This is not the typical fact pattern involving an anti-competition agreement where an employee resigns from the plaintiff company for the sole purpose of competing with that company.  Baker testified that Prosonic had demoted him and that any future advancement at Prosonic was improbable.  (Baker Test., Doc. 27, p. 132, lines 4-24.)  When Baker resigned from Prosonic, he did not immediately begin employment with WDC; rather, he obtained employment with TN & Associates ("TN"), an environmental consulting firm, which *consumes* drilling services rather than *sells* them. (Baker Test., Doc. 27, p. 133, lines 12-25.)  TN is thus not a competitor of Prosonic.  Baker testified that, while employed by TN, he did not sell drilling services.  (Baker Test., Doc. 27, p. 134, lines 1-3.)  When Baker commenced employment with WDC, fifteen months had passed since he had last sold drilling services for Prosonic.  (Baker Test., Doc. 27,  p. 134, lines 4-8.)

In essence, Baker's perceived demotion; his employment by a noncompeting

company immediately following his resignation; and the fifteen-month interval separating his employment with Prosonic from his employment with WDC, greatly dilute Prosonic's claims of wrongdoing by Baker and are proper considerations for a court sitting in equity. Because Prosonic has failed to establish a colorable likelihood of success on the merits of its claims or that it will suffer irreparable harm if Baker were not enjoined, I find it proper to deny its request for injunctive relief.

### III.  Conclusion

1.  Plaintiff's Motion for Preliminary Injunction (Doc. 3) is **denied**.

2.  Defendant Baker shall maintain detailed records of all business activities that Prosonic contends are proscribed under the Agreement so that money damages, if any, may be reasonably ascertained in the event that Baker ultimately is found to have violated the Agreement.

**ORDERED** on November 30, 2007.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**